IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
CIVIL ACTION NO. 7:21-cv-00146-M

| | |
|---|---|
| MDO MANAGEMENT, LLC, <br><br> Plaintiff, <br><br> v. <br><br> THE CINCINNATI INSURANCE COMPANY, <br><br> Defendant. | **AMENDED COMPLAINT** <br> **(JURY TRIAL DEMANDED)** |

**NOW COMES** Plaintiff, by and through undersigned counsel, pursuant to Rule 15(a)(1) of the Federal Rules of Civil Procedure, to amend the Complaint in this action, and to complain of the Defendant by alleging and saying as follows:

## PARTIES

1. Plaintiff is a North Carolina limited liability company, and its sole member, Michael D. Olander, Jr., is a citizen and resident of Wake County, North Carolina.

2. Defendant is an Ohio Corporation with a principal office and place of business in Fairfield, Ohio. At all times relevant to this Complaint, Defendant was duly authorized to transact and was transacting business in North Carolina.

## JURISDICTION & VENUE

3. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship, and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

4. The Defendant is subject to personal jurisdiction in this District.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events, acts, or omissions giving rise to the underlying claim and questions surrounding coverage under the policy of insurance at issue occurred there.

## FACTUAL ALLEGATIONS

6. MDO is the lessee of property located at 7979 Market Street, Wilmington, North Carolina (the "Property"). At all times relevant to this Complaint, Plaintiff operated a fitness gym ("O2 Fitness") on the Property.

7. The Property consists of a two-story, commercial structure with a mono-slope roof framing and a standing seam metal roof.

8. For the period of June 15, 2017 to June 3, 2019, the Property was insured by Defendant under Policy No. EPP 044 6140 (hereinafter, the "Cincinnati Policy" or "Policy").

9. The Policy was issued by Defendant and provided special form insurance coverage for Plaintiff's Property, including as a result of windstorms.

10. Hurricane Florence made landfall in North Carolina on September 14, 2018, causing catastrophic damage to buildings and structures throughout the State over the course of several days.

11. The Property was no exception; it sustained severe wind damage, and ensuing damages therefrom, as a result of Hurricane Florence (the "Loss"). The Property suffered from low-level racking and roof uplift as a result of the high sustained winds during Hurricane Florence.

12. Plaintiff timely paid all premiums for the Policy, and the Policy was in full force and effect at the time of Hurricane Florence.

13. Plaintiff timely submitted a claim to Defendant for the damage related to the Loss (the "Claim"), and Defendant first inspected the Property on September 27, 2018. It was originally

assigned a claim number under a different Cincinnati Policy held by Plaintiff, and this issue was not corrected until late 2020 by Defendant. As of present, the Claim is assigned claim number 3622012.

14. Due to the Defendant taking years to investigate and adjust the Claim, Plaintiff, at its own expense, retained InterCoastal Public Adjusters to help prepare, present, and adjust the Claim.

15. As a result of the wind damage from Hurricane Florence, and the delayed and improper adjustment by Defendant, the Property suffered extensive damage from water intrusion.

16. Finally, on October 23, 2020, Plaintiff's Counsel, Defendant's adjuster (Ms. Dale), Defendant's experts (Mr. Menard and one unidentified "expert"), Plaintiff's Public Adjuster, and Plaintiff's experts met at the Property for a joint inspection.

17. Defendant retained Mr. Menard, a regularly used, biased and predictable expert in the insurance industry, to inspect the Property. (According to his advertisements, Mr. Menard provides engineering opinions solely to insurance companies as to whether a loss falls within the purview of coverage – *See https://youngonline.com/property-damage-assessment*). Despite Plaintiff's experts standing and pointing out storm damage to Mr. Menard, Mr. Menard still wrote a report saying that he found no storm damage whatsoever at the Property, which was just miles away from where Hurricane Florence's eye made landfall. Instead, he purportedly observed "chronic and progressive" roof leaks as a result of alleged improper maintenance.

18. On December 15, 2020, Defendant finally denied the Claim, which was made within one week of Hurricane Florence, because storm-related damage was apparently not identified by Defendant's biased and predictable expert. The Denial Letter is attached hereto as Exhibit 1.

19. On March 26, 2021, Plaintiff's counsel responded to Defendant's denial, included with this response was a Sworn Statement in Proof of Loss, an estimate for the repair of the roof prepared by Eastern Construction Group, an estimate for repairs and remediation by American Water & Fire, and a detailed and thorough rebuttal from a team of experts (including Redmond Engineering and ProBuilders of the Carolinas) to the opinions of Mr. Menard that the Property had no storm damage whatsoever. Plaintiff demanded payment of the Claim within thirty days. A copy of this correspondence with all of its enclosures is attached hereto as Exhibit 2.

20. Defendant rejected Plaintiff's Sworn Statement in Proof of Loss ("PSSOL") on April 21, 2021. In the same email correspondence, Defendant's counsel based Defendant's rejection of the PSSOL on the fact that Plaintiff's expert report presented "general observations" and did not "identify any specific breaches in the building envelope" or "identify where the leak is located." Defendant further attempted to discredit both the Eastern Construction Group Estimate and the American Fire and Water Estimate. Defendant further demanded that Plaintiff provide a line-item list of every single bit of damage at the Property.

21. On April 26, 2021, Plaintiff's counsel informed Defendant that Plaintiff, at Defendant's insistence, requested its contractors and public adjusters to work together to create an itemized list of all property damaged by Hurricane Florence. Plaintiff's counsel relayed that it would take at least 30 days for the itemized list to be completed, a very reasonable amount of time. This correspondence is attached hereto as Exhibit 3.

22. Nevertheless, on May 20, 2021—less than thirty days following Plaintiff's counsel's April 26, 2021 letter—Defendant's counsel responded and suggested that Plaintiff was in non-compliance with the Policy because it was taking too long to create the itemized list of damage.

23. On May 27, 2021, Plaintiff sent correspondence, enclosing Defendant's demanded itemized list of all damages and an explanatory letter from Eastern Construction Group, which is attached hereto as Exhibit 4. The same was received by Defendant exactly 30 days after Defendant demanded the same.

24. Thereafter, Defendant requested a re-inspection of the Property with both Defendant's and Plaintiff's experts present. Plaintiff's counsel responded and reminded Defendant that Plaintiff had already spent thousands of dollars in paying its experts. Further, Plaintiff had already paid its experts to attend one inspection with Defendant's engineer. However, Plaintiff was willing to present its experts for a re-inspection if Defendant agreed to pay the costs associated with the experts' time and travel. In an email dated May 25, 2021, Defendant refused Plaintiff's request to pay for its experts to attend yet another inspection.

25. Regardless, Defendant conducted another re-inspection on June 14, 2021, without Plaintiff's experts present, and with its lawyers in attendance.

26. Following the re-inspection, Defendant of course again continued to refuse to make any payments upon the Claim.

27. Without payment of the Claim, and as a result of Defendant's delay tactics and repeated, and unreasonable denials, Plaintiff has incurred, and will continue to incur, significant expenses, property depreciation, attorney's fees, litigation costs, and other expenses and damages.

28. Defendant has failed to provide a reasonable basis for its failure to pay the full value of the Claim or for its unreasonable positions taken in the adjustment of Plaintiff's Claim.

29. At all times throughout the adjustment of the Claim, Plaintiff complied as promptly as possible with every request made by Defendant for information regarding the Claim and has

otherwise fulfilled all conditions precedent and contractual obligations under the Policy prior to the filing of this lawsuit.

30. Plaintiff has done everything in its power to mitigate damages and to prevent further damages as a result of the Property's compromised state.

## FIRST CLAIM FOR RELIEF
### Breach of Contract

31. Plaintiff realleges and incorporate the preceding allegations as if fully set forth herein.

32. The Policy constitutes a contract between Plaintiff and Defendant.

33. Defendant breached the Policy and purposefully attempted to deny Plaintiff its benefits under the Policy in that it:

a. Purposefully and repeatedly adhered to a baseless position as to the coverage for the Claim, despite evidence damages exceeded that which was recorded by its adjuster from hurricane damage;

b. Acted intentionally in delaying the adjustment of Plaintiff's Claim, in taking unreasonable positions as to the Claim, and in purposefully providing little to no explanation for refusing to adjust the Claim, all to deny Plaintiff its benefits under the Policy;

c. Repeatedly invited Plaintiff to submit further evidence as to coverage for the Claim, at its own expense, only to refuse to review such evidence or reasonably incorporate it into the adjustment of the Claim;

d. Repeatedly and baselessly alleged that the reports, estimates and other evidence from Plaintiff's experts had no substantive impact on coverage and on the value of the Claim without any reasonable explanation or reasoning as to why they had no substantive impact;

e. Purposefully engaged in various delay tactics intended to frustrate Plaintiff's efforts to resolve the Claim, all in an attempt to pressure Plaintiff into foregoing seeking payment on the Loss, to deny Plaintiff its benefits under the Policy, and to force Plaintiff to initiate this litigation to recover the amounts owed under the Policy;

f. Generally, refused to pay the Claim when it was due under the Policy; and

g. Otherwise breached the terms of the Policy, as Plaintiff will demonstrate at trial.

34. As a direct and proximate result of Defendant's breach of the Policy, Plaintiff has been damaged, and Plaintiff is further entitled to all consequential, contractual and other damages as proven through discovery and trial.

35. Plaintiff is entitled to prejudgment interest at the legal rate of 8%.

## SECOND CLAIM FOR RELIEF
### Breach of the Covenant of Good Faith and Fair Dealing

36. Plaintiff realleges and incorporates the preceding allegations as if fully set forth herein.

37. Defendant's conduct alleged herein was in bad faith and in violation of the covenant of good faith and fair dealing implied by law into the Policy.

38. Defendant's conduct, actions, omissions and refusals to timely and promptly adjust and pay the Claim constitutes bad faith. A nonexclusive list of Defendant's bad faith includes:

a. Misrepresenting pertinent facts relating to coverage at issue, particularly regarding coverage for the Claim;

b. Failing to acknowledge and act reasonably promptly upon communications with respect to the Claim;

c. Purposefully and repeatedly adhering to a baseless position as to coverage for the Claim, specifically regarding the scope of coverage and causation of the Loss;

d. Failing to acknowledge and act reasonably promptly upon evidence from Plaintiff concerning the extent of damage;

e. Utilizing biased and predictable experts and relying solely thereupon for the denial of the Claim;

f. Repeatedly inviting and requesting Plaintiff to spend its time and money gathering estimates, reports, and other evidence for coverage of the Claim, only to ignore such evidence and continue to deny the Claim;

g. Refusing to provide reasonably prompt and clear communications as to why Plaintiff's estimates, reports, and evidence did not support coverage for the Claim;

h. Failing to conduct a reasonable investigation of the Claim;

i. Purposefully engaging in numerous delay tactics in order to pressure Plaintiff to forego pursuing full payment of the Claim and eventually forcing Plaintiff to initiate this lawsuit in order to recover the amount that is owed on the Claim;

j. Failing to act in good faith to effectuate prompt, fair, and equitable settlement of the Claim, despite liability under the Policy being reasonably clear;

k. Misusing its power and authority in such a way to be tantamount to outrageous conduct; and

l. As will otherwise be shown through discovery and trial.

39. As a proximate result of Defendant's breach of the covenant of good faith and fair dealing, Plaintiff has been damaged, and Plaintiff is entitled to recover for the same. Additionally, Plaintiff is entitled to recover punitive damages from Defendant for the above-described conduct, which was willful and wanton, in the maximum amount permitted by law.

# THIRD CLAIM FOR RELIEF
**Unfair Claims Settlement Practices
And Unfair & Deceptive Trade Practices**

40. Plaintiff realleges and incorporate the preceding allegations as if fully set forth herein.

41. The conduct of Defendant constitutes unfair claims settlement practices that violate one or more of the subparts of N.C.G.S. § 58-63-15(11), and Unfair & Deceptive Trade Practices in violation of Chapter 75 of the North Carolina General Statutes, including, but not limited to:

   a. Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

   b. Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;

   c. Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;

   d. Refusing to pay claims without conducting a reasonable investigation based upon all available information;

   e. Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;

   f. Compelling the insured to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amount actually due to such insured;

   g. Attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled;

h. Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement;

i. Purposely failing to act in good faith to effectuate prompt, fair, and equitable settlement of the Claim in which liability had become reasonably clear based on the estimates, reports, and other evidence provided by Plaintiff at the request and invitation of the Defendant;

j. Intentionally refusing to review or consider the evidence regarding the extent of damage to the Property and the value of the Claim provided by Plaintiff or to incorporate such evidence into its adjustment of the Claim, despite repeatedly and expressly informing Plaintiff that it would do so;

k. Ignoring the detailed repair estimates provided;

l. Failing to provide any explanation or communication to Plaintiff regarding why the evidence provided by Plaintiff was insufficient to alter Defendant's denial of Plaintiff's Claim, despite evidence that damages exceeded that which was recorded by its adjuster from hurricane damage;

m. Failing to adopt and implement reasonable standards for the prompt investigation and adjustment of claims arising under its policies, including the Claim, and for resolution of those claims under its policies, including the Policy;

n. Purposely refusing to abide by its own standards for prompt investigation and adjustment of claims arising under its policies and attempting to manipulate those procedures for its own benefit;

o. Refusing to consider, review, incorporate, or respond to the evidence provided by Plaintiff in good faith, and otherwise delaying payment of the Claim;

p.  Utilizing biased and predictable experts and relying solely thereupon for denial of the Claim; and

q.  Other particulars as will be adduced through further investigation, discovery, or at trial.

42. More particularly, with Defendant's actual and/or constructive knowledge of Plaintiff's damages and coverage therefore, Defendant unfairly and unlawfully failed to promptly investigate, adjust and pay the Claim in violation of North Carolina law, N.C.G.S. § 58-63, and Chapter 75 of the North Carolina General Statutes. The factually specific statutory violations, in part, are outlined above and said violations, in part, correspond to violations of provisions of North Carolina law found from N.C.G.S. § 58-63-15(11)(a) through N.C.G.S. § 58-63-15(11)(n).

43. Defendant's above-described conduct, in violation of N.C.G.S. § 58-63-15(11), is a per se violation of N.C.G.S. § 75-1.1.

44. The conduct of the Defendant directly violates N.C.G.S. § 75-1.1 in that its acts were unfair, unscrupulous, immoral, deceptive, oppressive, and substantially injurious to Plaintiff and was an inequitable assertion of its power and position over Plaintiff under the circumstances.

45. The above-described conduct of the Defendant was not based upon honest disagreement or innocent mistake.

46. The above-described conduct of Defendant was committed intentionally, willfully, and with malice toward Plaintiff.

47. Defendant's actions were accomplished by aggravating or outrageous conduct, including malice, oppression, and reckless or wanton disregard of Plaintiff's rights.

48. Defendant's unfair and deceptive trade acts or practices were in or affecting commerce.

49. As a proximate result of Defendant's unfair claim settlement practices and unfair and deceptive trade acts and practices, Plaintiff has suffered damages in an amount equal to the benefits currently due under the Policy as well as additional damages to be proven at trial.

50. Pursuant to N.C.G.S. § 75-16, Plaintiff is entitled to treble its damages.

51. Pursuant to N.C.G.S. § 75-16.1, Plaintiff is entitled to an award of reasonable attorney's fees.

**WHEREFORE**, Plaintiff prays of the Court as follows:

1. That Plaintiff have and recover of Defendant a sum equal to the amount of benefits due under the Policy, as well as consequential, incidental, compensatory, and other damages to be proven at trial;

2. That Plaintiff be awarded treble its damages as provided by N.C.G.S. §§ 75-1.1 and 75-16, or at Plaintiff's election, punitive damages;

3. That the Court tax prejudgment interest on the award and post judgment interest on the entire judgment as permitted by law;

4. That the Court tax the costs of this action, including Plaintiff's attorney's fees as provided by the common law and the North Carolina General Statutes, including but not limited to Chapter 75 and 58 thereof, against Defendant;

5. That all issues of fact be tried by a jury; and

6. Such other and further relief as the Court may deem just and proper.

This the 16th day of September, 2021.

**HOWARD, STALLINGS, FROM,
ATKINS, ANGELL & DAVIS, P.A.**

By: /s/ Robert H. Jessup
Robert H. Jessup (State Bar No. 42945)
5410 Trinity Road, Suite 210
Raleigh, North Carolina 27607
Telephone: (919) 821-7700
rjessup@hsfh.com
*Attorneys for Plaintiff*

### CERTIFICATE OF SERVICE

The undersigned does hereby attest that on this day he filed the foregoing with the Clerk of Court via the CM/ECF System that will cause a service copy to be served upon all parties in this action. A copy will be served via mail to the North Carolina Commissioner of Insurance, as the legal agent of Defendant.

This the 16th day of September, 2021.

**HOWARD, STALLINGS, FROM,
ATKINS, ANGELL & DAVIS, P.A.**

By: /s/ Robert H. Jessup
Robert H. Jessup (State Bar No. 42945)
5410 Trinity Road, Suite 210
Raleigh, North Carolina 27607
Telephone: (919) 821-7700
rjessup@hsfh.com
*Attorneys for Plaintiff*